# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SUSAN CRUZ,                      )
                                )
    Plaintiff,           )
                                )
v.                              )       Case No. CIV-16-621-R
                                )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security  )
Administration,[1]               )
                                )
    Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Susan Cruz brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge David L. Russell has referred this matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R. _"). The parties have briefed their positions, and the case is ready for decision. For the reasons stated herein, it is recommended that the Commissioner's decision be affirmed.

---

[1] The current Acting Commissioner is hereby substituted as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on January 22, 2013, alleging a disability onset date of June 1, 2012. R. 95, 218-19, 265. Following denial of her application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on July 31, 2014. R. 109-68. In addition to Plaintiff, a vocational expert testified at the hearing. *See* R. 109-39. The ALJ issued an unfavorable decision on October 20, 2014. R. 92-108.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2012. R. 97. At step two, the ALJ determined that Plaintiff had the severe impairments of left-shoulder impairment, history of chronic heart failure/cardiomyopathy, insulin dependent diabetes mellitus, peripheral neuropathy, chronic obstructive pulmonary disease ("COPD"), hypertension, obesity, and sleep apnea. R. 97. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 97-98.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 98-102. The ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) with no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds. She can stand and walk 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. She should have no exposure to temperature or humidity extremes, wetness

or irritants such as gases, fumes or chemicals.  She cannot reach overhead or more than frequently handle, finger or feel with the left non-dominant upper extremity.

R. 98.

At step four, the ALJ found that Plaintiff's RFC allowed her to perform her past relevant work of customer-service representative, telephone answerer, cashier, and data-entry clerk.  R. 102.  The ALJ alternatively considered for step five whether there are other jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform.  R. 102-04.  Relying upon the vocational expert's testimony regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform unskilled light or sedentary occupations such as mail clerk, food-service worker, order clerk, or production assembler, and that such occupations offer jobs that exist in significant numbers in the national economy.  R. 103.

The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period.  R. 104.  Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision.  *See* R. 1-7; 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In her request for judicial review, Plaintiff sets forth a lengthy list of overlapping claims of error. Plaintiff's claims are grouped under two headings: "THE ALJ ERRED WHEN HIS STEP 2 FINDINGS WERE NOT REFLECTED AT STEP 5" and "THE OBESITY ERROR." Pl.'s Br. (Doc. No. 11) at 2-12. Within these broad categories, Plaintiff asserts a miscellany of criticisms but repeatedly fails to identify for the Court whether she is asserting a lack of substantial evidence or a legal error (i.e., the two determinations to which the Court's review is confined). Nor does Plaintiff specifically identify which of the determinations in the ALJ's sequential evaluation was purportedly undermined by any specified error. Absent identification of the *impact* of any error, Plaintiff repeatedly fails to establish that reversal is required. For example, as to the first

4

heading, the ALJ's step-four finding of nondisability was conclusive, and the step-five finding merely an alternative disposition; the integrity of this finding was "not compromised in any way by the recognition that step five, if it were reached, would dictate the same . . . result." *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994); *see* R. 102-04; 20 C.F.R. § 404.1520(a)(4)(iv), (f).

The undersigned herein addresses those arguments directly raised and adequately developed by Plaintiff, as listed and considered below. Primarily, the undersigned considers Plaintiff's assertion that there are "errors in [the] RFC" and that "[l]ight work is completely contraindicated" for Plaintiff. Pl.'s Br. at 9, 12; *see Poppa*, 569 F.3d at 1169. As to the various undeveloped arguments, the undersigned finds them waived, noting:

> This Court cannot address contentions for which a claimant fails to develop the factual and legal bases for his arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). On judicial review, "it is not our role to shore up [the claimant's] argument for [her]." *Chrismon v. Colvin*, 531 Fed.Appx. 893, 896 (10th Cir. 2013) (citation omitted).

*Bryant v. Berryhill*, No. CIV-15-1151-HE, 2017 WL 401263, at *5 (W.D. Okla. Jan. 30, 2017) (internal quotation marks omitted).

I. "THE ALJ ERRED WHEN HIS STEP 2 FINDINGS WERE NOT REFLECTED AT STEP 5"

   A. *The ALJ's Consideration of Plaintiff's Diabetes Mellitus and Related Conditions*

      1. Plaintiff's Diabetes Mellitus

The ALJ found that Plaintiff suffered from several severe impairments, including insulin dependent diabetes mellitus (or "IDDM"). R. 97. Plaintiff argues that Plaintiff

"does not just have IDDM," "she has 'brittle diabetes,' which further reduces her RFC [more] than 'normal' diabetes." Pl.'s Br. at 2 (citing R. 556). "Brittle" diabetes refers to diabetes mellitus (or "DM") "in which there are marked fluctuations in blood glucose concentrations that are difficult to control." *Brittle Diabetes*, *Stedman's Medical Dictionary* 528 (28th ed. 2006).

Plaintiff states: "Type 1 brittle diabetes is not at all like IDDM Type II,"[2] because "[i]t is idiosyncratic" and "follows none of the 'normal' IDDM rules"; "[t]his is where most ALJ[]s miss the mark and misinterpret the ability to perform work"; "ALJ[]s routinely dismiss the complications of brittle diabetes"; and "[l]ooking at how [the ALJ] described [Plaintiff's] severe impairment of only diabetes, one can readily tell that since he did not define it by its proper medical term, he failed to personally distinguish how different it is from Type II Diabetes." Pl.'s Br. at 2-3.

This entire supposition is unsupported by any citation to facts or law. Further, regardless of whether the ALJ used the term "brittle" (which appears exactly once in the entire medical record) to describe Plaintiff's diabetes, he expressly recognized this salient aspect of Plaintiff's condition, stating, "Records reflect the claimant's diabetes mellitus was not well controlled . . . ." R. 100. The ALJ also discussed and cited records and

---

[2] According to both the Social Security Regulations and *Stedman's Medical Dictionary*, Plaintiff's distinction is erroneous: DM is categorized either as Type 1 (which was previously known as insulin-dependent DM or juvenile-onset DM) or as Type 2 (which was previously known as non-insulin-dependent DM or adult-onset DM). Either Type 1 or Type 2 can be "brittle" in nature, and there is no "IDDM Type 2." *See* 20 C.F.R. pt. 404, subpart P app. 1, § 9.00(B)(5); *Diabetes Mellitus*, *Stedman's Medical Dictionary*, *supra*; *id.*, *Brittle Diabetes*.

testimony reflecting that Plaintiff's condition was poorly controlled. *See, e.g.*, *id.* at 99, 100, 101. Plaintiff has not shown that this ALJ failed to recognize the poorly controlled nature of Plaintiff's IDDM.

In the course of discussing Plaintiff's IDDM, the ALJ stated: "While records reflect the claimant's diabetes mellitus was not well controlled, there is no evidence the claimant suffered any end organ damage or that she had any significant problems with her vision, kidneys, hands, or feet." R. 100. Plaintiff argues that this statement shows that the ALJ improperly "required" Plaintiff "to show end-organ damage to win her disability case." Pl.'s Br. at 3, 6. As suggested by the Commissioner, *see* Def.'s Br. (Doc. No. 17) at 6, this is an unreasonable construction of the sentence, which does not condition anything upon such a finding. Rather, the ALJ noted the lack of any evidence of such end-organ damage as support for his conclusion that Plaintiff's diabetes was not as debilitating as she alleged and for his RFC determination that Plaintiff could perform light work, subject to additional limitations. *See* R. 98-99, 100-02. Plaintiff does not challenge the ALJ's finding that no such evidence was in the record.

### 2. Plaintiff's Related Conditions

Plaintiff challenges the ALJ's finding that there was "no evidence" that Plaintiff "had any significant problems" with her hands or feet. R. 100; *see* Pl.'s Br. at 3. This finding is arguably unsupported given Plaintiff's history of cellulitis and finger/arm abscesses and her severe impairment of peripheral neuropathy. *See, e.g.*, R. 328-31, 353-63, 441-46, 490. But any error here is harmless: the ALJ followed up this statement by recognizing and discussing in detail the medical evidence of "cellulitis and abscesses of

the groin and finger/arm" and the diabetic neuropathy that Plaintiff likewise relies on.  R.

100; *see also id.* at 100-01 (citing Exs. 1F (R. 312-26), 2F (R. 327-50), 4F (R. 389-424),

5F (R. 425-60), 6F (R. 461-73), 7F (R. 474-85), 8F (R. 486-94), 12F (R. 522-39)); *see*

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163, 1173 (10th Cir. 2012); *cf. Harris v. Astrue*,

496 F. App'x 816, 819 n.1 (10th Cir. 2012) ("The burden to show prejudicial error on

appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

First, the ALJ noted that Plaintiff's testimony that her abscesses had not improved

was "not supported by evidence" in the record "as there was no noted treatment for

abscesses after October 2012." R. 100 (citing Exs. 8F, 10F (R. 496-515), 11F (R. 516-21),

12F, 13F (R. 540-49), 14F (R. 550-69), 17F (R. 596-625)).  Plaintiff disputes the ALJ's

conclusion, stating that the abscess-related symptoms "persisted through 2014."  Pl.'s Br.

at 7 (citing R. 486, 523, 525, 531, 552-53).  None of Plaintiff's cited pages, however,

support this contention with respect to the abscesses on her extremities or her groin.  *See*

R. 486, 523, 525, 531, 552-53; *see also Chrisman*, 531 F. App'x at 896.  The evidence does

reflect that Plaintiff sought treatment for an abscessed tooth in October 2014.  *See* R. 531-

36.  But Plaintiff fails to identify any functional limitation (or any support in the record for

a functional limitation) associated with the abscessed tooth.  *See* Pl.'s Br. at 7, 9; SSR 96-

8p, 1996 WL 374184, at *1 (July 2, 1996) ("Medical impairments and symptoms, such as

pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or

restrictions caused by medical impairments and their related symptoms that are categorized

as exertional or nonexertional.").

Next, the ALJ explicitly considered evidence reflecting that: certain of Plaintiff's abscesses had healed; Plaintiff had denied numbness or weakness and walked without difficulty; and Plaintiff had performed activities of daily living (or "ADLs") without assistance. *See* R. 100-01 (citing Exs. 1F, 2F, 4F, 5F, 6F, 7F, 10F). The ALJ therefore recognized Plaintiff's hand- and feet-problems, considered evidence of the same, and determined the RFC in light of the record as a whole. *See* R. 98-102; 20 CFR § 404.1545(a)(3), (4); *see Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence."); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Plaintiff does not point to any evidence that the ALJ failed to consider in this respect and does not specifically challenge the ALJ's weighing of any item of evidence.

Plaintiff thus has not shown that the ALJ's findings regarding Plaintiff's IDDM and related conditions are unsupported by substantial evidence, legally flawed, or otherwise undermine the RFC determination.

B. *The ALJ's Consideration of Plaintiff's Severe Impairments*

Plaintiff next argues that "[t]he ALJ failed to link all of [Plaintiff's] symptoms and limitations with her severe impairments." Pl.'s Br. at 3; *see also id.* at 2. To the extent Plaintiff is contending that the ALJ must match each aspect of the RFC determination to a specific condition or a specific item of medical evidence, this argument fails. It is well

established that the RFC determination need only include such limitations as the medical record substantially supports. *See* SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."); *Chapo*, 682 F.3d at 1288; *Kirkpatrick v. Colvin*, 663 F. App'x 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record."). Plaintiff therefore cannot show error by the ALJ, or a lack of support for the RFC, due solely to any failure to expressly "link" the RFC's limitations and restrictions to each and every step-two severe impairment.

## C. The ALJ's Consideration of Plaintiff's Impairments in Combination

Plaintiff asserts that the ALJ "failed to link . . . how [Plaintiff's] brittle diabetes interacted with" her other severe impairments and "certainly never considered them in combination properly, or how would he have her standing all day?" Pl.'s Br. at 3-4.

To the contrary, the ALJ specifically explained at steps two and three he considered all of Plaintiff's impairments, both separately and in combination with each other, and that he considered "all symptoms" in formulating Plaintiff's RFC. R. 96 (citing 20 C.F.R. §§ 404.1520(c), (e), .1526), 97 (noting Plaintiff's "combined impairments"). That consideration is manifest in the ALJ's RFC analysis. *See* R. 98-102 (ALJ discussing Plaintiff's IDDM and multiple other conditions and complaints in the RFC determination). Plaintiff identifies no reason to find otherwise beyond her dissatisfaction with the result. *Cf. Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (rejecting claimant's

argument that ALJ did not consider combined effect of impairments when ALJ addressed "various impairments" and appellate court found "nothing to suggest they were not properly considered"); *Wall*, 561 F.3d at 1070 ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (alteration and internal quotation marks omitted)).

### D. The ALJ's Assessment of Plaintiff's Abilities

Citing Plaintiff's own hearing testimony and a function report Plaintiff completed in March 2013, Plaintiff argues that the ALJ was "wrong" in "false[ly]" stating that "Plaintiff's daily activities do not reflect those of a disabled person." Pl.'s Br. at 4-6 (emphasis omitted) (citing R. 120-23, 126, 129; *id.* 279-86 (Ex. 10E)). In this portion of her Brief, Plaintiff presents (what purports to be) a lengthy block quotation and represents that the text within is Plaintiff's own statement on the function report. This presentation is misleading: there are many discrepancies—alterations, additions, and omissions—between the actual function report and the summary quote,[3] and nowhere in this block quotation does the Brief distinguish between the words that are preprinted on the form and the words that Plaintiff actually wrote upon the form. *Compare id.*, *with* Ex. 10E.

---

[3] For example, the form asked Plaintiff: "Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?" Plaintiff checked the "Yes" box. The form then asked: "If YES, for whom do you care, and what do you do for them?" Plaintiff answered: "Husband, only make some meals for him. Most times he cooks for me & cleans." R. 280. In the midst of the block of text, Plaintiff's Brief omits entirely— with no indication through an ellipsis or otherwise—both the question asked on the form and the portion of the answer reflecting that Plaintiff takes care of her husband, quoting only the more favorable "[m]ost times" portion. *See* Pl.'s Br. at 5.

In addition, the ALJ did not make the statement suggested by Plaintiff. Rather, the ALJ found that Plaintiff's statements regarding "the intensity, persistence and limiting effects" of Plaintiff's symptoms "were not entirely credible" in light of all the evidence in the record, including Plaintiff's statements regarding her ADLs, and that although not all of Plaintiff's complaints were discounted, none of Plaintiff's medically determinable impairments "are severe enough to prevent [Plaintiff] from participating in substantial gainful activity." R. 99, 101-02.

Plaintiff does not specifically challenge the ALJ's credibility determination in this appeal. *See* Pl.'s Br. at 4-6, 9; *see also Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). Any such challenge would fail because, when viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not conclusory and is sufficiently "linked to substantial evidence" in the record. *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). The ALJ examined not only Plaintiff's own reports of her Plaintiff's daily activities but also the medical evidence of record in determining the RFC. The ALJ discussed Plaintiff's hearing testimony at length and reasonably found that Plaintiff's testimony that she lies down about 22 hours a day "seems overstated" in light of Plaintiff's own responses on the March 2013 function report, the fact that "there was no evidence of any muscle atrophy," and the fact that Plaintiff had denied any changes in ADLs or any decreased exercise tolerance. *See* R. 101. The ALJ also cited evidence reflecting that Plaintiff's COPD was generally controlled with medications, that Plaintiff's most recent sleep study found no significant sleep apnea, that Plaintiff did not seek treatment for her history of chronic heart failure/cardiomyopathy until

May 2014 (about two years after the alleged disability onset date), and that Plaintiff's blood pressure was often normal or only slightly elevated, with no evidence of end-organ damage, stroke, cardiovascular disease, or functional limitations related to her elevated blood pressure. *See* R. 99, 100.

E. *The ALJ's Analysis of Plaintiff's Dental Disease, Headaches, and Cardiomyopathy*

Plaintiff asserts that "[t]he ALJ engages in several medical opinions in determining RFC." Pl.'s Br. at 8-9. Her entire argument thereon consists of a bulleted list of six sentence fragments regarding the ALJ's decision, which offer no citation to any legal authority supporting the proposition that the ALJ erred and, with two exceptions, are accompanied by no citation to the medical evidence of record. *See id.* Presumably Plaintiff has in mind Tenth Circuit decisions such as *Robinson v. Barnhart*, in which the appellate court explained, "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted). But Plaintiff does not argue, and the record does not reflect, that the ALJ rejected any treating physician's assessment with respect to the issues listed. And as noted above, it is the ALJ's job, not a physician's, to determine the functional limitations that are required due to a claimant's impairments. *See Young*, 146 F. App'x at 955.

Plaintiff's fifth bullet reads: "Her diabetes complicated by dental disease severity of pain alleged appears disproportionate to that supported by objective medical evidence." Pl.'s Br. at 8.  The ALJ's actual finding was as follows:

> It was noted diabetes was complicated by significant dental disease on April 9, 2014; however, with the exception of diabetic neuropathy in the feet, the claimant denied any radiating pain, numbness or tingling.  She was found to have loss of longitudinal arch of the feet bilaterally but there was no swelling or tenderness and she was only referred for diabetic shoes (12F). Furthermore, on May 13, 2014, the claimant denied any decreased exercise tolerance and she had no muscle weakness, loss of coordination/balance or any gait disturbance.  Additionally, on June 9, 2014, the claimant admitted she engaged in 2.5 to 5 hours of weekly activity (17F).  Given the above evidence, the undersigned finds the severity of pain alleged appears disproportionate to that supported by objective medical evidence and the claimant's reports to physicians that her numbness in the feet was only intermittent.

R. 101.

Plaintiff argues that "[i]t is hard to believe" the ALJ's "dental comment" and that Plaintiff's pain "was never 'disproportionate.'"  Pl.'s Br. at 9.  Plaintiff first cites a notation, made by a primary-care physician in the course of reviewing Plaintiff's treatment by another physician for dental issues, that "[r]eview of the chart for dentistry shows that this has been obviously painful process requiring the use of oxycodone and antibiotics on a regular basis over the last 3 months."  R. 531.  Plaintiff also argues that her abscesses "required Dilaudid."  Pl.'s Br. at 9 (citing R. 553).  But as noted above the ALJ's determination that Plaintiff's subjective complaints were not entirely credible is expressly linked to substantial evidence in the record.  And Plaintiff's citation to a record created from an emergency-room visit for a bladder infection does not contain any reference to abscesses or to Dilaudid/hydromorphone.  *See* R. 553.  Finally, Plaintiff again fails to

explain what functional limitation associated with Plaintiff's dental disease should have been, but was not, incorporated into the RFC determination.

Plaintiff's sixth bullet reads: "Since doctors did not write down complaints of headaches and a normal MRI she is not credible. Really he was finding nonseverity based upon his medical degree." Pl.'s Br. at 8.[4] Plaintiff goes on to argue that even if the headaches were nonsevere,[5] the ALJ erred by failing to consider that condition, as well as Plaintiff's cardiomyopathy, in formulating the RFC. *See* Pl.'s Br. at 10 ("[I]t was error not to properly analyze [Plaintiff's nonsevere conditions] in [the] RFC. The headaches and cardiomyopathy are certainly not in there.").

Plaintiff's complaint regarding cardiomyopathy not being considered for purposes of the RFC assessment is easily dismissed. Although the ALJ found that Plaintiff's chronic

---

[4] The ALJ's actual finding was more nuanced:

> While the claimant testified to headaches twice a week, evidence does not fully support this. Records show the claimant did report persistent headaches in February and July 2012 while her blood sugar was high (4F) and she was prescribed Fioricet and Maxalt. However, she denied any frequent headaches or visual changes on July 23, 2012 (2F/2) and MRI of the brain was normal (3F). Furthermore, there was no mention of any ongoing headaches to treating physicians in 2013 or 2014 (10F, 11F, 12F, 13F, 14F, and 17F). This evidence diminishes the claimant's credibility.

R. 101.

[5] Alongside her "nonseverity" argument, Plaintiff cites four additional records and argues that she did receive treatment for headaches in 2013 and 2014, "despite the ALJ's protests otherwise." Pl.'s Br. at 8 (citing R. 487-88, 527, 570, 590). But Plaintiff has shown no mischaracterization of the evidence by the ALJ. Only one of her four cites actually reflects a complaint of headaches during the 2013-2014 time period, as opposed to a past history of headaches. And this April 2014 complaint was not made to a treating physician, or even a treatment provider, but to a state consultative examiner. *See* R. 487-90. The ALJ discussed the consultative examiner's opinion several times in the written decision. *See* R. 99, 100.

heart failure/cardiomyopathy was not as debilitating as Plaintiff alleged it to be, *see* R. 100, he also found at step two that this was a "severe impairment," and he addressed the condition in detail as part of the RFC determination. *See* R. 97, 98-101.

Plaintiff's complaint regarding headaches likewise is meritless. Even assuming the ALJ erred in failing to find that Plaintiff's headaches were a medically determinable impairment,[6] the Tenth Circuit has stated that "a failure to find an impairment medically determinable is essentially a step-four error," which can "be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)). Here, the written decision reflects that the ALJ considered evidence and testimony regarding Plaintiff's headaches in assessing her RFC. *See* R. 99, 101. The ALJ's discussion of Plaintiff's headaches therefore "satisfied the ALJ's obligation at step four" with respect to that condition. *Wells*, 727 F.3d at 1069; *cf. Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (upholding ALJ's consideration of certain impairments in assessing claimant's RFC where ALJ discussed the impairments "in detail" at step two and stated that "he took into account 'the entire record' and 'all symptoms' in determining" the RFC).

Similarly, any error in failing to find that Plaintiff's headaches were nonsevere at step two "is not reversible" because "the ALJ proceed[ed] further to evaluate other

---

[6] Plaintiff fails to explain how this alleged impairment "satisfied the requirements of 20 C.F.R. §[] 404.1509." *Brewer v. Colvin*, No. CIV-13-420-R, 2014 WL 1612652, at *6 (W.D. Okla. Apr. 22, 2014).

impairments," as well as the headaches themselves. *Ray*, 657 F. App'x at 734. Plaintiff's

argument that the ALJ failed to "consider[] and discuss[]" the headaches in the RFC

assessment "is entirely refuted by the text of the written decision, in which the ALJ

specifically considered evidence and testimony regarding Plaintiff's [headaches] when

analyzing Plaintiff's RFC." *Bryant*, 2017 WL 401263, at *7; *see* R. 99, 101.

Plaintiff has not established any reversible error in this respect.

### F. *Plaintiff's Allegation That the ALJ Was Biased*

Next, Plaintiff nominally alludes to reversal due to potential bias exhibited by the

ALJ, alleging, without any citation to the case record:

> It appears that this ALJ simply did not like [Plaintiff], or her case, because
> he dismissed so many symptoms of a severe disease process. It is suggested
> that the Commissioner reassign this case to a new ALJ. The deception and
> tone of the ALJ's decision, including his tendency to reinterpret so much of
> the medical evidence, suggest that he might have an "unshakeable
> commitment" to the denial of [P]laintiff's claim.

Pl.'s Br. at 7-8 (quoting *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)).

As an initial matter, Plaintiff offers the Court no specific example of the ALJ's

supposed dislike of Plaintiff or commitment to denying her claim. Plaintiff's conclusory

contentions therefore "lack the specificity required to support her argument." *Bryant*, 2017

WL 401263, at *8 (alterations and internal quotation marks omitted) (citing *Effinger v.

Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (noting that the

court "will not comb through the record where counsel has not provided specific references

tied to an argument")).

Further, if Plaintiff believed the assigned ALJ was prejudiced against her, she was required by the applicable regulation to "notify the [ALJ] at [her] earliest opportunity." *See* 20 C.F.R. § 404.940. The record does not reflect that Plaintiff, who was represented by counsel below, objected on this basis during the administrative hearing or prior to issuance of the ALJ's decision. The only objection indicated by the record occurred after the ALJ's unfavorable decision was issued, when the ALJ's alleged bullying and prejudgment of Plaintiff were raised by Plaintiff in requesting Appeals Council review. *See* R. 2, 311.

The applicable regulation prescribes that an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party." 20 C.F.R. § 404.940; *see Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990) ("An ALJ is required to be fair and impartial, not prejudiced against a claimant . . . ."). Neither Plaintiff's vague contentions of the ALJ's "tone" nor the ALJ's thorough questioning of Plaintiff at the administrative hearing demonstrates prejudice requiring reversal of this matter. Nor is there any allegation or indication that Plaintiff was denied the opportunity to develop a full and adequate record in this case. *See Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996) (rejecting a claimant's assertion of bias when claimant received a full opportunity to develop the record).

In sum, Plaintiff's naked, conclusory allegation cannot overcome the "presumption of honesty and integrity in those serving as adjudicators" in administrative proceedings. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The mere denial of benefits is insufficient; "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."

*See Liteky v. United States*, 510 U.S. 540, 555 (1994).  Further, "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  *Id.*  "*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display."  *Id.* at 555-56 (discussing challenges to federal judges); *see also Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999).  Here, Plaintiff has not demonstrated bias on the part of the ALJ, properly objected to by Plaintiff, that would warrant reversal on this claim of error.

## II.  "THE OBESITY ERROR"

Plaintiff also contends that the ALJ's analysis of Plaintiff's obesity was inadequate and that light work is "completely contraindicated" given Plaintiff's "vocational profile" (a term whose relevance is not further explained) and "her level of obesity when combined with her other total body severe impairments."  *See* Pl.'s Br. at 10-12 (discussing the standing and walking requirements of light work).  But Plaintiff does not assert, much less establish, that she is incapable of performing the two *sedentary* occupations the ALJ alternatively found that she could perform.  *See* R. 103; SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (stating that light work requires approximately six hours of standing or walking, off and on, during an eight-hour workday, while sedentary work generally requires standing or walking no more than two hours in an eight-hour workday).

Moreover, Plaintiff did not "testify that [her] weight contributed to [her] inability to engage in activities in any way."  *Briggs v. Astrue*, 221 F. App'x 767, 771 (10th Cir. 2007)

(internal quotation marks omitted); *see* R. 121 (Plaintiff testifying that a 100-pound weight loss did not affect her symptoms). Plaintiff points to no omitted functional limitation that was necessary due to her obesity, offers only speculation as to her obesity's impact upon her ability to stand and walk, and "has not shown that her obesity alone, or in combination with . . . impairments, resulted in any further limitations" or precluded her from performing light work. *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)); *see also Callicoatt v. Astrue*, 296 F. App'x 700, 702 (10th Cir. 2008) (rejecting challenge to ALJ's failure to consider claimant's obesity where claimant pointed to no evidence or testimony "showing that her obesity exacerbated her other impairments"); *Woods v. Colvin*, No. CIV-13-763-HE, 2014 WL 2801301, at *5 (W.D. Okla. May 28, 2014) (R. & R.) (rejecting claimant's challenge to ALJ's consideration of obesity where claimant "fail[ed] to state what 'sufficient limitations' the ALJ *should* have included"), *adopted*, 2015 WL 2801304 (W.D. Okla. June 19, 2014).

In the written decision, the ALJ found that Plaintiff's obesity was a severe impairment, *see* R. 98, and specifically discussed evidence and testimony reflecting Plaintiff's obesity in the course of formulating the RFC, *see* R. 101 ("The claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the functional limitations determined herein."). Plaintiff's argument is essentially a complaint that the ALJ should have been "required to note the absence of any evidence that [Plaintiff's] obesity resulted in additional functional limitations or exacerbated any other impairments"—a proposition that has been rejected

by the Tenth Circuit. *See Smith*, 625 F. App'x at 899. Plaintiff has not shown that the ALJ erred in considering Plaintiff's obesity.

## RECOMMENDATION

For the reasons stated herein, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 14, 2017. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 31st day of August, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE